STAR BEDDING COMPANY, Appellant,

v.

The ENGLANDER COMPANY, Inc., Appellee.

No. 15434.

United States Court of Appeals. Eighth Circuit.

Jan. 2, 1957.

538

Lawrence C. Kingsland, St. Louis, Mo. (Estill E. Ezell, Edmund C. Rogers, and Kingsland, Rogers & Ezell, St. Louis, Mo., on the brief), for appellant.

Edwin A. Rothschild, Chicago, Ill. (Alfred W. Petchaft, St. Louis, Mo., and Sonnenschein, Berkson, Lautmann, Levinson & Morse, Chicago, Ill., on the brief), for appellee.

Before GARDNER, Chief Judge, VOGEL, Circuit Judge, and HARPER, District Judge.

GARDNER, Chief Judge.

This was a civil contempt proceeding brought by appellant on allegations that appellee had violated and was continuing to violate the terms and provisions of a consent decree entered in a suit for alleged trade-mark infringement, which decree enjoined and restrained appellee, The Englander Company, Inc., "from using, in the sale of mattresses or similar goods, the word 'Star' or any representa-

tion or symbol of a star, or any other colorable imitation of plaintiff's said trade-mark; and from otherwise infringing said trade-mark". The consent decree, entered on December 3, 1945 terminated a trade-mark infringement action which appellant had commenced on January 5, 1945 against Stix, Baer & Fuller Co. and in which The Englander Company, Inc. had intervened. Appellant seeks a contempt adjudication only against The Englander Company, Inc.

As noted above, the original civil action out of which this present contempt proceeding arises was a trade-mark infringement suit. In that case the complaint charged that mattresses manufactured by appellee and sold at retail by Stix, Baer & Fuller Co. bearing a label consisting of the words "8-Star" in association with eight small five-pointed stars infringed appellant's trade-mark rights in the word "Star" and in a symbolic trade-mark comprising a five-pointed star. There were no allegations of unfair competition, passing off, or other collateral issues. The complaint tendered the issue as to confusing similarity between the label used in 1944 by appellee and appellant's registered trademarks. The complaint prayed for an injunction restraining defendant:

"(a) from using in the sale of mattresses or similar goods the word Star, or any representation or symbol of a star, or any other colorable imitation of plaintiff's trademark;

"(b) from otherwise infringing plaintiff's registered trademark."

In that action appellee intervened and took over the defense, denying that its label infringed appellant's trade-mark. In its answer it further alleged that appellee's label was a grade-mark, not a trade-mark, that stars were commonly understood to indicate grade and that a trade-mark for pillows was not infringed by a label affixed to mattresses. The issues framed by these pleadings were never tried but the litigation was voluntarily settled by the entry of a consent decree which recited appellant's

ownership of its trade-mark and appellee's infringement thereof by its label, and which gave to appellant the injunctive relief against trade-mark infringement as above set forth.

The present proceeding was commenced by appellant December 10, 1954 by filing its petition for an order of contempt charging appellee with violation of the consent decree. The petition, in substance, charged that prior to the filing of the petition appellant had notified The Englander Company of its violation of the injunction but that notwithstanding, The Englander Company, with full knowledge of said injunction and of its violation thereof, had made and had sold and was selling and offering for sale mattresses to which it had applied the representation of a star and symbol of a star in infringement of appellant's trade-marks and in violation of the injunction. The petition contained allegations charging irreparable injury and prayed that appellee be punished for contempt and for injunctional relief.

In answer to the petition appellee, in effect, pleaded that the design of the ticking in question known as "Dawn Gray" and consisting of clouds, sky and scattered stars depicting a gray dawn sky, was merely decorative and did not purport to indicate the source or origin of the mattresses covered by it, that the stars in the design had no trade-mark significance whatever, that appellee's goods covered by the ticking were offered for sale, sold and purchased by the public as "Englander" products under customary labels, that no advertising or promotional material prepared or used by appellee or its retailers made any identifying reference to stars or to any other feature of the "Dawn Gray" pattern, that there was no confusion and no likelihood of confusion, and further, that the consent decree did not confer upon appellant an unrestricted monopoly in the use of a common decorative device in fabric patterns or grant to appellant's alleged trade-mark the scope of a design patent.

At the hearing of the proceeding appellant offered in evidence the petition with attached exhibit and invoked judicial notice of the proceedings in the original case, including the entire proceedings. There is set out in the printed record on this appeal as being embodied in appellant's proof copy of the pleadings in the original action, label depicting appellant's trade-mark and copy of the consent decree in the original action. Appellee offered evidence in support of the allegations of its answer and its evidence was not controverted by any evidence offered by appellant so that it cannot be said that there is any real dispute as to the primary facts.

Appellant is in the business of manufacturing and selling feature pillows and feathers in the general class of upholstery. At all times here material it was the owner of two trade-marks comprising the word "Star" and the symbol of a star under which it sold its products, exemplified in the record as Plaintiff's Exhibit A as follows:

its customers, including appellee, and in September of 1954 appellee purchased a substantial quantity of such ticking which Golding then had in stock. Appellee did not originate the ticking or even know of its existence until the fabric was offered for sale in the ordinary course of business. Thereafter, during the winter season of 1954–1955, mattresses made up from such ticking were sold by appellee and its retail outlets generally throughout the United States. Its mattresses so made all bore a large label on which the trade-mark "Englander" prominently appeared. All national advertising carried on by appellee with reference to these mattresses prominently displayed the trade-mark "Englander" and identified the mattresses as products of The Englander Company, Inc., and the stars on the covering of its mattresses were not marks identifying their source or origin. There was testimony of various customers who purchased the "Englander" mattresses showing that they had purchased them

The appellee manufactures and sells mattresses. It uses the star as a decoration of the covering of its mattresses. These stars do not purport to be a trademark as such but are part of the fabric covering of the mattresses. As appears from the evidence the ticking covering the mattresses is imprinted with a design comprising a stylized representation of clouds, sky and scattered stars simulative of a gray dawn sky. The design was originated in 1953 by a freelance designer for Golding Bros. Company, Inc., a large fabric manufacturer. Golding manufactured it as a stock pattern for its 1954 line and offered it to all

under the "Englander" brand and trademark and that the word "Englander" was the only thing which performed the function of a trade-mark or designated source or origin. There was also evidence that stars are a common component of textile designs and have been long and widely used in mattress tickings. The designer of this ticking, with more than forty years' experience, testified that he had used stars in mattress-covering fabrics many times and that designs incorporating stars go back to the history of fabric making. The vice-president of the country's largest ticking manufacturer testified that he had

sold ticking material containing stars for more than twenty years. As pointed out by the trial judge, there was no evidence of any confusion between the merchandise of The Englander Company, Inc. and the merchandise of appellant. The court found all the issues in favor of appellee and specifically found that the accused article was not a label originated by appellee but the covering or ticking on a mattress which appellee procured on the open market, that fabrics containing the star symbol are numerous, that the ticking in question was originated and manufactured, unsolicited and unknown to appellee, by Golding Bros., and that Golding Bros., with whom appellee had no connection, is a manufacturer of fabrics. The court, in effect, found that all the material, affirmative allegations of the answer were established by the evidence and the court concluded as a matter of law that there had been no infringement of appellant's trade-marks by appellee and hence, no violation of the consent decree, and dismissed appellant's petition.

In seeking reversal appellant does not allege any specific errors on behalf of the trial court but urges: (1) that as between appellant and appellee the consent decree of December 3, 1945 is conclusive as to its contents, (2) that as between appellant and appellee the consent decree of December 3, 1945 is to be reviewed and interpreted as written and not as it might have been drawn, (3) that to show trade-mark infringement, hence a violation of the consent decree of December 3, 1945, it was not necessary for appellant to show actual confusion among purchasers of the accused mattresses, the showing made of likelihood of confusion being sufficient, (4) that appellee's use of stars on a mattress cover, as exemplified by Respondent's Exhibit 1, is an infringement of appellant's federally registered trade-mark "Star" and symbol of a star applied to pillows; hence, is a violation of the consent decree of December 3, 1945 and (5) that by the consent decree of December 3, 1945 appellee was established as an in-fringer of appellant's star mark; thereafter it was incumbent upon appellee to stay well away from appellant's mark.

The appellant's presentation seems to be on the theory that the case is here triable de novo but as we have often pointed out it is the province of this court to consider alleged errors of law committed by the trial court in reaching its decision, and not to try the issues de novo. The only alleged error of law set out in appellant's brief is the following:

"* * * that the District Court erroneously required Appellant to go beyond the requirements of an original infringement action and adduce proof of actual confusion, for proof of actual confusion is not necessary in a trade-mark infringement action * * *."

We shall consider points one and two together. It may well be conceded that as between the parties a consent decree is conclusive as to its contents and it may also be conceded that the consent decree is to be reviewed as written. The question, however, which was before the court was a construction or interpretation of the decree and its application to the proven facts in the instant proceeding. The court held that the consent decree enjoined only trade-mark infringement. With this interpretation we agree and we are of the view that unless the accused decorations on appellee's mattress coverings infringed appellant's trade-marks they could not properly be construed to be violative of the provisions of the consent decree. In a contempt proceeding for violating an injunction a decree may not be enlarged beyond the issues raised by the pleadings and this rule is particularly pertinent in a proceeding for contempt. Terminal Railroad Ass'n of St. Louis v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150; Chouteau Trust Co. v. Massachusetts Bonding & Ins. Co., 8 Cir., 1 F.2d 136; California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 5 S.Ct. 618, 28 L.Ed. 1106. The applicable rule is:

542

succinctly stated in Terminal Railroad Ass'n of St. Louis v. United States, supra, as follows [266 U.S. 17, 45 S.Ct. 8]:

"In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree so read."

■■ The original action terminated by the consent decree was an action for trade-mark infringement only. The court in this proceeding specifically found that there was no infringement of appellant's trade-marks. The findings of the court on the issues here are based upon undisputed evidence, are presumptively correct, and may not be set aside unless clearly erroneous. Rule 52 (a), Federal Rules of Civil Procedure. In this connection it should be observed that the consent decree was not the result of a trial of the issues but was entered on stipulation of the parties. As stated in American Radium Co. v. Hipp. Didisheim Co., 2 Cir., 279 F. 601, 603:

"Consent decrees, as their name implies, are the result of an agreement, sometimes precedently expressed in formal stipulation, and sometimes, as here, solely in the decree itself. They are to be read within their four corners, and especially so because they represent the agreement of the parties, and not the independent examination of the subject-matter by the court. They are binding only to the extent to which they go. Neither court nor party can write in them what is not there, and thus change what was agreed upon between the parties."

■■ The only question at issue in the original case was whether or not appellant's "Star" trade-mark had been infringed by appellee's use of an "8-Star" label. In the present case appellee was not charged with using designs used by it at the time the original action was brought and the use of which was therein enjoined. It has presumably complied with the injunctional provisions of the consent decree and it was incumbent upon appellant to prove that it had violated the decree by the use of the decorations on the covering of its mattresses. This the court specifically held it had failed to do and the unchallenged findings are supported by substantial evidence. In determining whether there has been a violation of an injunction decree the same tests are applicable on the issue of violation as in issuance of an injunctive decree. Jewel Tea Co. v. Kraus, D.C.N.D.Ill.E.D., 107 F.Supp. 59; Nims, Unfair Competition and Trademarks, 4th Ed. p. 1188. The accused decoration in the instant proceeding was not adopted by appellee as a trade-mark and it in no manner pointed to the source or origin of the article. By its trade-mark appellant did not acquire a general monopoly as to the use of the symbol of a star. As said in Galena-Signal Oil Co. v. W. P. Fuller & Co., C.C.N.D.Cal., 142 F. 1002, 1007:

"It is manifest that the symbol or representation of a star cannot by its own meaning indicate the origin or ownership of such an article as oil. It can only, then, be by association that its origin or ownership can be so indicated. But the representation of a star is a familiar symbol, and can be found in every character of business and associated with all kinds of products and goods. Standing alone, it is not sufficiently distinctive to answer the requirements of a trade-mark, for the reason that it has been adopted by many manufacturers and producers for all kinds of articles. It can be found all through the Patent Office Gazette, but always in connection with some other mark or device to indicate origin or ownership."

It is urged by appellant that the court erred in holding that there was no infringement because there was no ac-

tual confusion. There was very convincing evidence that there was no actual confusion; in fact, appellant's president was interrogated and answered on this question as follows:

"Q. All right. Now, have you ever had any complaint from a retail customer who purchased a mattress with the Dawn Gray ticking and thought it was a mattress made by you? A. No."

The vice-president of appellant was also interrogated on the question and testified as follows:

"Q. Now, Mr. Steinhart, have you ever in your personal conduct of this affair or connection with this affair have you ever had any indication that there was any confusion between the merchandise of the Englander Company and merchandise of your company? A. Confusion, what do you mean by that?

"Q. Well, has any customer ever thought that Englander merchandise was made by your company instead of by Englander? A. No.

"Q. Have you had any indication from any retail store, buyers, jobbers or people of that sort that merchandise manufactured by the Englander Company bearing this Dawn Gray ticking which is accused here was being taken for your merchandise? A. Well, no, I haven't had anything like that. I don't know of any incident."

True, this was evidence of a negative character but appellant produced no evidence indicating that there had been any confusion between merchandise of The Englander Company, Inc. and merchandise of appellant, and the court found that there was no likelihood of confusion. This finding, we think, cannot be said as a matter of law to be clearly erroneous. The confusion must go to the question of the source or origin of the article. Whether such confusion is likely to occur is a question of fact to be determined on consideration of many factors. As said in Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618, 623:

"Thus the ultimate question of infringement is one of the type ordinarily classified as one of fact (see Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 964; France Milling Co. v. Washburn-Crosby Co., Inc. [2 Cir., 7 F.2d 304], supra), and as such it is one primarily for the fact-finding tribunal—in this case the district court—reviewable here only for clear error under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c."

We have held the same rule to prevail in a suit for unfair competition. Thus, in Brown & Bigelow v. B. B. Pen Co., 8 Cir., 191 F.2d 939, 943, we said:

"The trial court found as a matter of fact that '* * * there is little likelihood of purchasers who exercise ordinary care being confused to such an extent as to purchase the plaintiff's ball point pen, believing it to be an article of the defendant.' Unfair competition is a question of fact, General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709, 712; Best & Co. v. Miller, 2 Cir., 167 F.2d 374, 377. The trial court's finding of fact in this regard is binding on us unless it can be shown to be clearly erroneous. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.; F. W. Fitch Co. v. Camille Inc., 8 Cir., 106 F.2d 635.

\* \* \* \* \* \*

"The gist of the charge here is that there is unfair competition in that appellee has used on its products a symbol similar to appellant's symbol. Unfair competition is a question of fact. The trial court found that there was no actual or likely confusion in the mind of the public as to the origin of the products of the two parties and that therefore, in the absence of such confusion, there was no infringement and thus no unfair competition."

We have considered all other contentions of the appellant but find them wholly without merit. The judgment appealed from is therefore affirmed.