**DART DRUG CORPORATION et al., Appellants,**

v.

**SCHERING CORPORATION, Appellee.**

**No. 17217.**

United States Court of Appeals District of Columbia Circuit.

Argued April 11, 1963.

Decided June 13, 1963.

---

Mr. Robert B. Hirsch, Washington, D. C., with whom Mr. Thomas Schattenfield, Washington, D. C., was on the brief, for appellants.

Mr. John Bodner, Jr., Washington, D. C., with whom Mr. William Simon, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge and FAHY and BURGER, Circuit Judges.

BAZELON, Chief Judge.

Having adjudged appellants in contempt of an injunction in this trademark infringement suit, the District Court imposed a fine and entered a broadened injunction. Only a particular aspect of the enlarged restraint is challenged here.

The contempt arose in the following manner. On January 20, 1960, Schering Corporation, the manufacturer of a cold tablet bearing the trademark CORICIDIN, filed a complaint in the District Court to enjoin a chain of stores known as Dart Drug Stores from marketing a cold tablet named BIOCIDIN.[1] On January 12, 1961, the District Court approved a settlement stipulation of the parties and dismissed

1. The complaint alleged unfair competition and violations of the Lanham Act, 15 U.S.C. § 1051 et seq.

the complaint with prejudice. Under the stipulation Dart agreed not to use the word BIOCIDIN as a trademark or trade name on any of its own pharmaceutical products, or to use any other word containing certain syllables specifically listed therein. The syllable DIN was included in the proscribed list but the syllable DON was not. There was also a list of words, including BIODON, the use of which plaintiff agreed would not be in violation of the stipulation.[2] Thus the stipulation was carefully delimited. It did not contain any admission by Dart of trademark infringement or unfair competition nor did it prohibit "colorable imitations" of Coricidin or "further acts of unfair competition." [3]

*A. First hearing, on violation of the stipulation.*

In May 1961, after Dart had decided to rename its products BIOVIDON, a name not in violation of the stipulation, Schering charged that Dart had violated the stipulation by advertising for sale a cold tablet bearing the interdicted name BIOCIDIN. After hearing the District Court found, in a decree dated June 30, 1961, that on April 27, 1961, there appeared in the Washington Post "an advertisement of the defendants which used, advertised and referred to BIOCIDIN products" in violation of the stipulation.[4] The court, noting that the stipulation provided for "a permanent injunction for the relief prayed for [in the original complaint]" upon a showing of a violation by Dart of the stipulation, thereupon enjoined Dart from using the name BIOCIDIN or any other name containing, *inter alia,* the syllable DIN.[5] The decree did not include an adjudication that Dart had engaged in trademark infringement or unfair competition, nor did it enjoin colorable imitations of Coricidin or further acts of unfair competition.[6]

*B. The second hearing, on violation of the injunction.*

On April 26, 1962, Schering filed a motion to adjudge Dart in contempt for violation of the District Court's decree of June 30, 1961. The motion, as amended, alleged that on or about April 25, 1962, Dart offered for sale at three of its retail drugstores cold tablets named BIOVIDIN, a name in violation of the injunction because containing the syllable DIN.

At the contempt hearing, Dart did not deny the charge concerning sales of BIOVIDIN, or that these sales violated the injunction. It claimed only that the violations were not willful. To establish this claim Dart explained that one

2. The stipulation recited: "Defendants have advised the plaintiff that they are considering the use of either the trade name BIOCARE, BIOCOLE, BIODON, BIOCOLD, BIOPURE, BIOPRIN, BIOCIN, BIOCINE or BIONICOL [BIOCINOL?] and plaintiff agrees that the use of any such trade name or trademark shall not be deemed in violation of this stipulation."

3. The stipulation did, however, provide that the court would retain jurisdiction and, in the event of a breach by Dart, "enter a permanent injunction for the relief prayed for in the complaint, in the *customary and usual form of an injunction in a suit for trade mark infringement and unfair competition* * * *."

4. The BIOCIDIN advertisement was apparently an error on the part of the advertising agency for Dart, but the court ruled that Dart was legally responsible for the acts of the agency.

5. In pertinent part the decree, differing only in wording from the stipulation, reads as follows: "[T]he defendants [are] enjoined * * * from at any time or in any manner using the name BIOCIDIN as a trademark or trade name for any pharmaceutical product manufactured, sold or marketed by them, * * * and they are further enjoined * * * from using any trade name or trademark in the marketing or sale of any product containing substantially the same formula of any CORICIDIN product listed on pages 2 and 3 of that certain Schering price list dated October 13, 1960, which includes any syllable which is identical to any of the following syllables or any combination of any of said syllables: (1) COR, (2) CI, (3) CID, (4) DIN, (5) SCHER, (6) RING: and these provisions shall also pertain to any phonetic sound identical to any of the above, such as using (1) K for S or C [K or S for C?] and (2) Y for I."

6. Cf. note 3 supra.

of its manufacturers had shipped a supply of BIOVIDON and BIOVIDON-DC (a related product) mislabeled BIOVIDIN and BIO-VIDIN-DC. It also appeared that on the very day of the hearing a quantity of BIOVIDIN-DC was still located in a window display in one Dart drugstore. Dart's counsel attributed the failure to remove this display to the crowded nature of Dart's window displays.

At the conclusion of the contempt hearing, the court found "that defendants have indicated by their conduct a disinterest in and a disregard for the provisions of the said Decree of this Court and that the defendants have violated the provisions of the said Decree of this Court and that the violation is contumacious in that defendants have not attempted effectively to comply with the said Decree of this Court." The court adjudged defendants in contempt and, in addition to other remedies not challenged on this appeal,[7] enjoined defendants "from any and all further acts of unfair competition and trade mark and trade name infringement including those arising from their use of the trade names BIOCIDIN, BIOVIDIN and BIOVIDON or any other simulation or colorable imitation of plaintiff's products bearing the trade mark CORICIDIN * * *."[8] Cf. 15 U.S.C. §§ 1114(1) (a), 1116. In this appeal Dart challenges the decree only insofar as it enjoins the use of BIOVIDON,[9] a word not expressly prohibited in whole or in part by either the stipulation or the decree of June 30, 1961.

We think that the word BIOVIDON could be enjoined only upon a determination either that (1) the use of BIOVIDON by Dart constitutes unfair competition to Schering or infringement of Schering's trademark CORICIDIN, or (2) that enjoining the use of BIOVIDON is necessary as a remedy for past violations of the decree of June 30, 1961, in order to assure future compliance.

The District Court did not state its reason for prohibiting BIOVIDON. There was no evidence and the court made no finding that BIOVIDON is so similar to CORICIDIN that its use is likely to cause confusion in the minds of the purchasing public.[10] Since "the same tests are applicable on the issue of violation as in issuance of an injunctive decree," there was no basis for enjoining the use of BIOVIDON as unfair competition or trademark infringement. Star Bedding Company v. Englander Company, 239 F.2d 537, 542 (8th Cir., 1957). Schering argues, however, that "BIO-VIDON was as close to BIOCIDIN as human ingenuity could devise without violating the prohibitions [and] did not represent a good-faith attempt to use a dissimilar name so as to prevent any likelihood of

---

7. The other remedies were a fine of $500 plus the costs of the contempt proceeding, and an order that Dart pay to plaintiff attorneys' fees and expenses amounting to $2896.37.

8. Dart was also ordered to submit an affidavit within ten days showing that it had "destroyed all goods, labels, signs, printed packages, [etc.] bearing the designation BIOCIDIN, BIOVIDIN and BIOVIDON or any other simulation or colorable imitation of plaintiff's said trade mark and trade name CORICIDIN thereon." Cf. 15 U.S.C. § 1116.

9. The District Court has granted a stay of "that part of the Court's Decree * * * which enjoins and restrains said Defendants from the use of the trade name 'BIOVIDON' and requires them to destroy all BIOVIDON material in their possession * * *."

10. For purposes of the present case it is sufficient to state that confusion to the public is the essence of both trademark infringement, see 15 U.S.C. § 1114(1), and unfair competition, see e.g., McGraw-Hill Pub. Co. v. American Aviation Associates, Inc., 73 App.D.C. 131, 117 F.2d 293 (1940); Everest & Jennings, Inc. v. E & J Manufacturing Co., 263 F.2d 254 (9th Cir., 1958), cert. denied, 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959); Faciane v. Starner, 230 F.2d 732 (5th Cir., 1956), and we intimate no views as to the validity or applicability of various particular doctrines of unfair competition such as palming-off and dilution (see Champion Paper & Fibre Co. v. National Ass'n of Mutual Ins. Agents, 102 U.S.App.D.C. 10, 249 F.2d 525 (1957)).

confusion * * *." For the proposition that Dart was required to keep far enough away from CORICIDIN "to avoid all possible confusion," Schering relies mainly on the cases of Eskay Drugs, Inc. v. Smith, Kline & French Laboratories, 188 F.2d 430 (5th Cir., 1951); and Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 215 F. 2d 434 (7th Cir., 1954).

In Eskay, appellants Eskay Drugs, Inc., et al., were enjoined by a consent decree, which contained an admission of infringement, from using appellee Smith, Kline & French's trademark "Eskay" or any colorable imitation thereof on certain specified products. In a subsequent contempt hearing, the lower court ruled that "Enkay" was a colorable imitation of "Eskay" in violation of the earlier decree. The Court of Appeals for the Fifth Circuit affirmed, saying:

> "Appellants, by the use of the word 'Enkay,' are trying to come about as close as is conceivably possible to a continuance of the use of the word 'Eskay' * * *. If this court permitted such an act, it would render ineffective the consent decree * *."

In the Stronghold case, supra, the Court of Appeals for the Seventh Circuit had held in a previous appeal of that controversy[11] that defendant's use of a particular corporate name constituted trademark infringement and unfair competition, and had remanded the case for entry of an appropriate injunction.[12] On remand, the District Court entered a decree allowing the defendant to use a name very similar to the prohibited name. In the second appeal which followed and to which we refer here, the court said that it was "convinced that the confusion mentioned in our previous opinion will continue to exist if defendant is permitted to [use the revised name]." 215 F.2d at 437.

The Eskay and Stronghold cases are distinguishable. In both there was either an admission or an adjudication of unfair competition or trademark infringement. In the present case there has never been such an admission or adjudication. Dart did not agree and was not ordered to refrain from "further acts of unfair competition" or the use of "colorable imitations" of CORICIDIN.[13] On the contrary, as we have already indicated, both the stipulation and the decree of June 30, 1961, expressly and meticulously listed the impermissible syllables and combinations of syllables. BIOVIDON was not included.

> "Consent decrees, as their name implies, are the result of an agreement, sometimes precedently expressed in formal stipulation, and sometimes * * * solely in the decree itself. They are to be read within their four corners, and especially so because they represent the agreement of the parties, and not the independent examination of the subject-matter by the court. They are binding only to the extent to which they go. Neither court nor party can write in them what is not there, and thus change what was agreed upon between the parties." Star Bedding Company v. Englander Company, supra, 239 F.2d at 542.

We cannot say that Dart's use of BIOVIDON would "render ineffective" the decree, as in Eskay, or result in the continuation of any confusion to the purchasing public, as in Stronghold.

11. Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 205 F. 2d 921 (7th Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953).

12. See also Independent Nail & Packing Co. v. Perry, 214 F.2d 670 (7th Cir., 1954).

13. We recognize that the decree below modifies the decree of June 30, 1961, so as to enjoin colorable imitations of CORICIDIN and that Dart has not appealed from that portion of the decree. But there has been no hearing upon which it could be determined whether BIOVIDON is a colorable imitation of CORICIDIN. Star Bedding Company v. Englander Company, 239 F.2d 537 (8th Cir., 1957).

Schering also argues that enjoining BIOVIDON was necessary to assure Dart's compliance with the prohibition against BIOVIDIN. Its argument seems to be that the record supports an inference that the similarity between DIN and DON, BIOCIDIN and BIOVIDON, and BIOVIDIN and BIOVIDON confused Dart's employees, advertising agency and supplier and thereby caused the prohibited use of BIOVIDIN; hence compliance with the decree of June 30, 1961, could be assured only by prohibiting BIOVIDON.[14] But we are not advised that the court drew any such inference. Since we cannot say with certainty that this is the only reasonable inference which may be drawn, we would have to engage in what is essentially the task of the fact-finder to determine whether the action below may be supported. We decline to do this. Hughes v. United States, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952).

The decree must therefore be reversed insofar as it prohibits the use of BIOVIDON. This will not bar Schering, however, from further efforts below to enjoin Dart's use of BIOVIDON either as (1) unfair competition or trademark infringement, or (2) a necessary part of the remedy for past violations of the decree of June 30, 1961, in order to prevent future violations.[15] See p. 748 supra. The first ground would require findings based upon an evidentiary hearing. See note 13 supra. The second ground would require findings, based upon the present record of the contempt proceedings, which we have described as essential in order to support the prohibition of BIOVIDON as a remedy for contempt. We intimate no opinion, of course, upon the questions which might thus be presented.

So ordered.

---

14. Cf. United States v. E. I. DuPont De Nemours & Co., 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961); Hughes v. United States, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952); Chrysler Corp. v. United States, 316 U.S. 556, 76 L.Ed. 999, 52 S.Ct. 460 (1942); United States v. Swift & Co., 286 U.S. 106, 86 L.Ed. 1668, 62 S.Ct. 1146 (1932); Elm Corp. v. E. M. Rosenthal Jewelry Co., 82 U.S. App.D.C. 196, 203, 161 F.2d 902, 909 (1947); Food Fair Stores v. Food Fair, 177 F.2d 177, 185–86 (1st Cir., 1949); Chemical Corporation of America v. Anheuser-Busch, Inc., 306 F.2d 433 (5th Cir., 1962), cert. denied, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963); Star Bedding Company v. Englander Company, 239 F.2d 537 (8th Cir., 1957); Coca-Cola Co. v. Standard Bottling Co., 138 F.2d 788 (10th Cir., 1943); International Silver Co. v. Oneida Community, 93 F.2d 437 (2d Cir., 1937).

15. The decree we review herein provides that the earlier decree "dated June 30, 1961, be and the same hereby is reaffirmed and incorporated herein by reference thereto * * *."