## HUGHES v. UNITED STATES.

No. 86. Argued January 7, 1952.—Decided February 4, 1952.

T. A. Slack argued the cause and filed a brief for appellant. Leonard P. Moore, John H. Dorsey and Francis J. O'Hara, Jr. were of counsel.

*Philip Marcus* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison, Ralph S. Spritzer* and *Robert L. Stern.*

Opinion of the Court by MR. JUSTICE BLACK, announced by MR. JUSTICE DOUGLAS.

A three-judge District Court has construed certain provisions of a Sherman Act[1] consent decree as compelling the sale of certain moving picture stocks owned by the appellant Hughes. This case is properly here on appeal from an order entered to compel the sale. 15 U. S. C. (Supp. IV) § 29.

These anti-trust proceedings were originally brought by the United States against Radio-Keith-Orpheum Corporation and other moving picture producers, distributors, and exhibitors. From the District Court's judgment in the case both the Government and defendants appealed. We affirmed in part and reversed in part. *United States* v. *Paramount Pictures, Inc.,* 334 U. S. 131. We remanded the case to the District Court leaving it free to consider whether it was necessary to require the production and distribution companies to divest themselves of all ownership and interest in the business of exhibiting pictures. Thereafter a consent decree was entered containing detailed provisions for complete divorcement of R. K. O.'s production-distribution assets from its theater assets. To accomplish this, R. K. O. was to form two new holding companies: one, the "New Picture Company," was to take over all R. K. O. subsidiaries engaged in production and distribution; the other, the "New Theater Company," was to own and control R. K. O. subsidiaries which operated theaters. Upon formation of the new companies, R. K. O. was to be dissolved. Former stockholders were to become the owners of all the capital stock of the two new companies.

A factor considered in connection with this divorcement was that Howard R. Hughes, appellant here, owned 24% of the common stock of R. K. O. No other person or corporation owned as much as 1%. He and government representatives agreed on terms to meet this situation. Their agreement was embodied in the consent decree, becoming section V. This section of the decree, set out below,* is the center of the present controversy. It provides that Hughes may "either" (A) sell his stock in one or the other of the two newly formed companies, "or" (B) deposit such stock with a court-designated trustee

---

*"V. Howard R. Hughes represents that he now owns approximately 24 percent of the common stock of Radio-Keith-Orpheum Corporation. Within a period of one year from the date hereof, Howard R. Hughes shall either:

"A. Dispose of his holdings of the stock of (1) the New Picture Company, or (2) the New Theater Company, as he may elect, to a purchaser or purchasers who is or are not a defendant herein or owned or controlled by or affiliated with a defendant in this cause; or

"B. Deposit with a trustee designated by the court all of his shares of the New Picture Company or the New Theater Company, as he may elect, under a voting trust agreement whereby the trustee shall possess and be entitled to exercise all the voting rights of such shares, including the right to execute proxies and consents with respect thereto. Such voting trust agreement shall thereafter remain in force until Howard R. Hughes shall have sold his holdings of stock of the New Picture Company or the New Theater Company to a purchaser or purchasers who is or are not a defendant herein or owned or controlled by or affiliated with a defendant herein, and upon such sale and transfer such voting trust agreement shall automatically terminate. Such trust shall be upon such other terms or conditions, including compensation to the trustee, as shall be prescribed by the Court. During the period of such voting trust, Howard R. Hughes shall be entitled to receive all dividends and other distributions made on account of the trusteed shares, and proceeds from the sale thereof.

"For the purpose of evidencing his consent to be bound by the terms of section V of this decree, Howard R. Hughes individually has consented to its entry and it shall be binding upon his agents and employees."

under a voting trust agreement to remain in force until Hughes shall have sold his stock in one of the companies. Hughes chose not to sell any stock, and he and the United States agreed on a trustee and the terms of a voting trust, which agreement was approved by a court order. Later, by motion the United States sought a court order forcing the trustee to sell Hughes' stock. Without evidence or findings of fact, and over Hughes' protests, the District Court amended its order appointing a trustee by providing that "if the stock trusteed shall not have been disposed of by Howard R. Hughes by February 20th, 1953, the trustee shall dispose of such stock within two years thereafter." Appellant Hughes urges that it was error to order his stock sold in so summary a manner.

*First.* The Government argues that section V should be read as compelling Hughes to sell his stock within a reasonable time. We hold that the language of the section imposes no such requirement. A reading of the either/or wording would make most persons believe that Hughes was to have a choice of two different alternatives. Hughes would have no choice if the first "alternative" was to sell the stock and the second "alternative" was also to sell the stock. Moreover, section V provided that, if Hughes did not sell his stock but chose to place it in a voting trust, this trust should remain in force "until Howard R. Hughes shall have sold" his stock. This would ordinarily mean that Hughes, not the Court, could decide whether his stock should be sold. Nor can a different inference be drawn from the language authorizing the court to provide the trust's general "terms or conditions, including compensation to the trustee." This language cannot support an inference that the court was empowered to deprive Hughes of either of his expressly granted alternatives.

Arguing on a broader front than the mere language of section V, the Government urges: that section V must

be interpreted so as to achieve the purposes of the entire R. K. O. consent decree; that the basic purpose of that decree was divorcement of production-distribution companies from theater exhibition companies; and that Hughes cannot consistently with this purpose be left with a 24% interest in both types of companies. It may be true as the Government now contends that Hughes' large block of ownership in both types of companies endangers the independence of each. Evidence might show that a sale by Hughes is indispensable if competition is to be preserved. However, in section V the parties and the District Court provided their own detailed plan to neutralize the evils from such ownership. Whatever justification there may be now or hereafter for new terms that require a sale of Hughes' stock, we think there is no fair support for reading that requirement into the language of section V. The District Court's order cannot be supported by reliance on such an interpretation. Consequently the court's command to sell the stock effected a substantial modification of the original decree.

*Second.* The Government finds support for the substantial change in the decree by reference to (1) provisions in the decree reserving jurisdiction to amend, and (2) the inherent equity powers of the court. We entertain no doubt concerning the District Court's power to require sale of Hughes' stock after a proper hearing. When this case was formerly here on other phases, 334 U. S. 131, we had occasion to point out the District Court's power to require some companies to divest themselves of ownership of other companies where necessary to preserve competition and to prevent monopoly. The guiding principles there set out would also justify compulsory divestment of stocks by an individual. But there has been no adequate hearing of this issue as to Hughes. Neither when the present order was considered nor when the original decree was entered were any findings of fact

made to support an order of compulsory sale of Hughes' stock. As previously pointed out the consent of Hughes did not include consent to make him sell. At every stage Hughes objected to the order forcing sale of his stock without a hearing that included evidence and a judicial determination based on it.

In these circumstances we hold that it was error to enter an order forcing Hughes to sell his stock.

*Reversed.*

MR. JUSTICE JACKSON and MR. JUSTICE CLARK took no part in the consideration or decision of this case.