### UNITED STATES
### v.
### THE LIQUID CARBONIC CORP. et al.
### Civ. 9179.

United States District Court
E. D. New York.
May 4, 1954.
Order Modified on Reargument
Sept. 2, 1954.

**142**

Alfred Karsted, Washington, D. C., for plaintiff.

Satterlee, Warfield & Stephens, New York City, for defendant, by James F. Dwyer, New York City.

RAYFIEL, District Judge.

On June 24, 1948, the plaintiff filed its complaint herein charging Liquid Carbonic Corporation and other defendants therein named with violations of sections 1 and 2 of Title 15, U.S.C., commonly known as the Sherman Act, in that, inter alia, they had engaged and were still engaging in an illegal combination and conspiracy to restrain competition and monopolize interstate commerce in connection with the manufacture, sale and distribution of carbon dioxide and dry ice. The defendants filed their respective answers to the complaint, denying generally the substantive allegations thereof.

On the 7th day of March, 1952, after a succession of conferences and negotiations, and with the consent of the several parties hereto, through their respective attorneys, a consent decree was made and entered as the final judgment herein.

In addition to certain injunctive and other relief against various defendants the final judgment provided (See section IX (E) (1), (2), (3), (4) and (5) thereof) for the following divestiture relief against the defendant Liquid Carbonic Corporation, hereinafter referred to as Liquid. It directed that Liquid shall dispose of its plants at Long Island City and Indianapolis as complete units, including real estate, buildings, machinery and appurtenant equipment, within one year from the date of the entry of the final judgment herein, and made provision for the appointment by the Court of a Trustee, through whom the disposal of said plants was to be effected. The term of appointment of said Trustee was to be one year, but the term could be extended upon a showing provided for in the judgment. Subsections (3), (4) and (5) of subdivision (E) of section IX of the judgment made provision, inter alia, for the appointment of an appraiser, and for certain terms and conditions of sale, including one list of classes or descriptions of persons who were disqualified from purchasing the plants, and another to whom the sale thereof was restricted. Proviso was also made for the maintenance and operation of the plants by Liquid at its best standards during the trusteeship, and for its co-operation with the Trustee and potential purchasers.

Under Section XIII of the final judgment jurisdiction was retained for the purpose of enabling any of the parties to apply to the Court "for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment or for the modification or amendment of any of the provisions thereof. * * *."

The Court appointed a Trustee in March, 1952, and in March, 1953, extended his term as such to May 1, 1953. Thereafter it was further extended to June 1, 1953, as to the Long Island City plant and November 2, 1953, as to the Indianapolis plant. The Trustee

was unable to effect the sale of either of the plants under the terms and conditions of the final judgment and accordingly his appointment terminated on November 2, 1953.

The Government now moves under Section XIII of the final judgment for an order carrying out the said judgment by directing Liquid to dispose of the said plants, and for such other and further orders as may seem appropriate and necessary to the Court.

Liquid's opposition to the Government's motion rests chiefly on its contention that the only provision in the judgment for the sale of the plants is that provided by Section IX(E) thereof, that is, through the Trustee; that the effort to effect such a sale failed; that Liquid consented to no other provision for the sale of the plants; and that the granting of the relief sought by the Government would be tantamount to a modification of the judgment beyond the limits of Liquid's consent and contrary to judicial decision. During the argument of the motion herein counsel for Liquid stated that he believed that since the Trustee was unable to effect a sale Liquid had the right to continue operations at the plants in question and intended so to do.

In support of its position Liquid cites the case of Hughes v. United States, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394, contending that in that case "a similar situation was presented." The instant case is clearly distinguishable from the Hughes case. The latter had consented to a decree, which provided, among other things, that within a year after the entry of the judgment he (Hughes) should *either* dispose of his holdings of stock *or* deposit the same with a court-appointed trustee under a voting trust agreement which provided that the trustee should possess and be entitled to exercise all the voting rights of such stock, and that the voting trust agreement should continue in force and effect until Hughes had sold his stock. Hughes elected not to sell his stock, and the District Court appointed a trustee and approved a voting trust agreement. Later the District Court, without hearing evidence, and without findings of fact, amended its order naming a trustee, and directed that the stock be sold.

Clearly the consent decree gave Hughes the right of election, the option to exercise a choice of the alternatives provided for in the decree. His decision to transfer the stock to the trustee was by implication a rejection of the other alternative, the sale of the stock. Mr. Justice Black who wrote the opinion of the Court, characterized the District Court's order directing the sale of the Hughes stock, made without a hearing, without findings of fact, and without a showing of necessity, as a substantial modification of the original decree. The other cases cited by Liquid, so far as they are offered in support of its contention herein, are inapposite.

It is the Government's contention that the final judgment is clear and unambiguous, that it requires that Liquid be divested of the plants in question, and that the Trustee's failure to find a purchaser under the terms and conditions of the decree in no way relieves Liquid of such requirement; further, that the construction of the decree suggested by Liquid would not reduce the extent of its dominance in the areas served by the plants in question, a result sought to be achieved by the complaint and the decree herein. It contends, also, that by adopting the consent judgment as the judgment of the Court it is conclusively presumed that disposal of the plants under any circumstances and conditions was necessary to correct the conditions charged in the complaint.

The Government claims that Section IX (E) had two purposes, (1) to divest Liquid of the plants in question, and (2) to attempt to effect the sale thereof to persons who would operate them in competition with Liquid.

I agree that those two purposes were the ultimate goal of the Government

so far as the plants in question are concerned, since their accomplishment would not only have reduced the monopolistic power and influence of Liquid charged in the complaint but would also have provided added competition, one of the objectives sought to be obtained. However, I am not in complete agreement with the Government as to the purposes of that provision of the decree. Since the Trustee was unable to secure a purchaser who would manufacture carbon dioxide and dry ice, thereby reducing Liquid's productive capacity *and* adding new competition in the areas involved, it would appear that the next best result, reducing Liquid's productive influence, could be accomplished as effectively by enjoining further production by Liquid at the plants in question as it could by compelling the sale and disposal thereof, and without subjecting Liquid to the possible substantial loss which might result from a sale under unfavorable circumstances and conditions.

■ As hereinabove stated, Liquid claims the right to continue production of carbon dioxide and dry ice at the said plants, arguing that its consent was limited to such manner of divestiture as could be accomplished through the medium of the Trustee, and only under the terms and conditions provided in Section IX (E) of the decree. Such an interpretation would do violence to the intent of the final judgment herein. While there were no findings of fact, and the chief substantive allegations of the complaint were denied by the defendants, nevertheless the general purpose of the complaint, the objectives sought to be achieved thereby, and the general scope and purpose of the decree may properly be considered in determining the intent of the parties in giving their consent thereto. That it was Liquid's understanding that the effect of the decree would be to proscribe further production activities at the plants in question is evidenced by the fact that W. A. Brown, Jr., President of Liquid, in his affidavit submitted in opposition to the Government's motion for an order directing Liquid to dispose of said plants, stated (referring to the Long Island City plant):—

"This plant has been entirely abandoned, is not used at present for storage or any other purpose, and it is not proposed that it will be in the future." An interpretation such as is suggested by Liquid would have the effect of robbing the Sherman Act of much of its efficacy, and would probably lead again to the conditions which this action and the said Act were designed to prevent.

Of what avail would the decree herein, so far as it applies to the Long Island City and Indianapolis plants, be if its effectiveness depended on such a fortuitous circumstance as the success of the Court-appointed Trustee in effecting the sale thereof within the moderate period of time and under the somewhat restricted terms and conditions provided in the decree? Such a holding would be unrealistic, repugnant to the very purpose of the anti-trust statutes, and tend to nullify a basic and integral part of the decree; it would make the divestiture provisions thereof meaningless.

It is my opinion that the intent and understanding of Liquid in consenting to the final judgment herein is indicated particularly by the last two sentences of subdivision 4 and all of subdivision 5 of Section IX (E) of the decree herein.

■ The Government's motion for an order directing Liquid to dispose of the Long Island City and Indianapolis plants is denied, without prejudice to a renewal thereof upon a proper showing of good cause therefor, and Liquid is enjoined from the production at either of said plants of carbon dioxide and/or dry ice.

Settle order on notice.