Johnnie G. JONES, et al., Plaintiffs,

v.

MILWAUKEE COUNTY, et al., Defendants.

No. 74–C–374.

United States District Court, E.D. Wisconsin.

Oct. 31, 1983.

See also, D.C., 85 F.R.D. 715.

Jeffery R. Myer, Legal Action of Wisconsin, Inc., Milwaukee, Wis., Patrick O. Patterson, New York City, for plaintiffs.

Gerard S. Paradowski, Acting Corp. Counsel by Patrick J. Foster, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

This action is before the court on the motion of four members of the plaintiff class for supplemental relief pursuant to ¶ 87 of the consent decree entered on March 10, 1980.

The plaintiffs filed this action in 1974 seeking relief from alleged unlawful discriminatory practices with respect to employment, transfer, and promotion of members of minority groups in the classified service of Milwaukee County. The employment practices in question were claimed to violate Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq. In 1975, the action was certified as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure.

On May 1, 1979, I granted the plaintiffs' motion for partial summary judgment on the issue of liability for discriminatory hiring and promotion practices in classified service position titles in six categories, including those in the protective services. The parties eventually agreed to a consent order which was approved by the court on March 10, 1980. The order enjoined the defendants "from engaging in any employment practice with respect to any member of the class while employed, either now or in the future, in the classified service which has the purpose or effect of unlawfully discriminating against any such class member." Consent order, ¶ 2.

In addition to granting relief in the form of back pay, the order required the defend-

ants to appoint a class member to every second regular appointment vacancy in each position title until the percentage of class members in the position title was equal to the goals established. The order set certain minority percentage goals for each position title in each category of the county's classified service.

The consent decree ordered that class members be given seniority for most purposes (including order of layoff and reinstatement) retroactive to March 24, 1972, for those who had filed a written application between March 24, 1970, and March 24, 1972, and to the date of submitting a written application for those applying between March 24, 1972, and the date of court approval of the consent order. The decree also contained provisions whereby class members could submit an affidavit indicating the date on which they would have applied for a particular position if they had not been deterred by the county's racially discriminatory hiring practices. These "affiant-participants" were to be given seniority credit retroactive to the last day of the calendar month in which they would have applied, if such seniority was greater than the retroactive seniority the class member would otherwise be entitled to under the decree.

The petitioners who now seek supplemental relief under the consent decree are members of minority groups, belong to the plaintiff class, and were covered by the consent decree; they were given adjusted seniority dates in accordance with the decree. All four petitioners were employed by Milwaukee County in the position of firefighter and equipment operator. All were laid off from their jobs on December 31, 1980. The layoffs resulted from a reduction in the number of firefighter positions due to Milwaukee County's decision to contract with the City of Wauwatosa for provision of fire protection services to county institutions located within the Wauwatosa city limits.

The four petitioners were placed on a recall list along with other laid-off employees, but none has been asked to return to work. After the list expired, the county began advertising, in February, 1983, for applicants for the position of firefighter and equipment operator at General Mitchell Field. Shortly thereafter, the petitioners filed their motion for supplemental relief under the consent decree, seeking reinstatement to their former positions and make-whole relief, including back pay and adjusted seniority dates.

The petitioners seek relief under paragraph 87 of the consent decree, which states that the court "shall retain jurisdiction of this action for such supplemental relief or corrective relief as may be necessary or appropriate upon application by any party." The petitioners have complied with the requirement in paragraph 87 that they notify the defendants of any alleged noncompliance with the decree and seek relief from the court only after the defendants have had 30 days to investigate the complaint and negotiate with the plaintiffs regarding resolution of the problem. Pursuant to paragraph 87 of the decree, therefore, the court has jurisdiction to consider the petitioners' motion.

■ At the outset, I reject the defendants' contention that the petitioners are barred from the relief they seek by the doctrine of laches. Assuming that this doctrine is applicable in actions under Title VII, the elements of the doctrine are not met here. "Mere delay is not sufficient, but where 'deferment of action to enforce claimed rights is prolonged and inexcusable and operates to defendant's material prejudice,' laches is 'an effectual bar' to recovery." *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477 (7th Cir.1975), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975), quoting *Boris v. Hamilton Manufacturing Co.*, 253 F.2d 526, 529 (7th Cir.1958). The defendant who asserts laches as a defense thus has the burden of establishing that the plaintiff's delay in bringing his claim was both inexcusable and prejudicial. *Burnette v. Cleveland Tankers, Inc.*, 469 F.Supp. 221 (E.D.Wis. 1979).

■ In this case neither element has been established. It is true that the petitioners did not move for supplemental relief until approximately two years after the layoffs occurred, although the attorney for the plaintiff class had been notified of the impending layoffs prior to their implementation. However, part of that delay was due to the requirement of notice and a negotiation period contained in paragraph 87 of the consent decree. Also, the petitioners remained on the recall list until shortly before their motion was brought and may well have hoped that their positions would be restored to them without the need for court action. A delay of two years under these circumstances cannot be deemed "inexcusable."

■ The defendants also have not made a convincing showing that they are or will be prejudiced by the delay. Their only allegation in this regard is a conclusory assertion that they will be prejudiced by any challenge to the decision to discontinue providing certain fire protection services two years after that decision occurred. There is no indication, however, that the passage of time has obscured the circumstances of that decision or rendered unavailable records or witnesses needed to establish those circumstances. In my opinion, the defendants have failed to demonstrate "material prejudice" arising from the petitioners' delay in bringing their motion.

The petitioners assert three grounds, any one of which would, they claim, give the court the power to grant the relief they seek and justify the granting of such relief. The three grounds are: (1) paragraph 87 of the consent decree; (2) the consent decree in general, viewed as a contract which the defendants have breached; and (3) the court's inherent equitable powers to enforce, and where necessary, modify a consent decree.

The first two of these grounds are similar, in that they both rely on the terms of the consent decree itself. With respect to the argument based on paragraph 87 of the decree, I agree with the petitioners that this paragraph gives the court jurisdiction to consider their claim and power to remedy instances of noncompliance with the consent order or to grant "appropriate corrective or supplemental relief." However, paragraph 87 is obviously general in terms; it cannot, standing alone, answer the question whether relief should be given under a particular set of circumstances. That question can only be answered by reference to the terms of the consent decree itself.

■ The petitioners' asserted second ground for relief relies on the defendants' alleged breach of the terms of the order. Consent decrees have been viewed by the courts as having many of the attributes of contracts. *See, e.g., United States v. ITT Continental Baking Co.,* 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *Brown v. Neeb,* 644 F.2d 551 (6th Cir.1981). The consent decree is to be construed for enforcement purposes essentially like a contract; its meaning is to be sought within its "four corners," although aids to construction such as circumstances surrounding the formation of the order may appropriately be used to resolve ambiguities. *ITT Continental Baking Co.,* 420 U.S. at 228, 95 S.Ct. at 930. A consent decree may be specifically enforced as written. *Stotts v. Memphis Fire Department,* 679 F.2d 541, 557 (6th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1331 (1983).

The petitioners acknowledge that the consent decree in this case contains no provisions relating to possible layoffs. However, they argue that the decree's general purpose was to remedy past discrimination by the county, primarily by means of the affirmative action program mandated by the decree. The petitioners assert that the layoffs in the fire protection services have resulted in a loss of all minority employment gains achieved under the consent decree and the preceding preliminary injunction. Claiming that these "unnecessary layoffs" violate the intent of the consent decree, the petitioners ask the court to require the defendants to "live up to the

terms of the Consent Order" by granting the relief sought by the petitioners.

The petitioners cite two cases which upheld a trial court's grant of a preliminary injunction against layoffs that were not prohibited by a consent decree but that threatened to destroy minority hiring or promotion gains. *See Stotts, supra; Brown, supra.* In both these cases some reliance was placed upon the court's power to enforce the terms of the consent decree, although in the *Brown* case, Judge Brown, who authored a "concurring" opinion that was, in fact, the majority opinion in the case, stated his view that the terms of the consent decree did not proscribe the layoffs in question. *Brown,* 644 F.2d at 564–65 (Brown, J., concurring in the result). *See* Hamburger, *Alternatives to Seniority-Based Layoffs: Reconciling Teamsters, Weber, and the Goal of Equal Employment Opportunity,* 15 Mich.J.Law Reform 523, 536 n. 76 (1982).

■ Like the *Brown* and *Stotts* decrees, the consent order in this case is silent with respect to layoffs. Unlike those decrees, however, it grants retroactive seniority to members of the plaintiff class. Considering that the decree contains no prohibition of layoffs by seniority and also contains provisions designed to provide at least some protection from the operation of a "last hired, first fired" principle, I do not believe that the decree can be properly construed to prohibit, by its terms, the layoffs instituted by the county or to require the granting of the relief sought by the petitioners.

The fact that the decree sets affirmative action goals for employment of minorities does not change this result. The decree does not, by its terms, obligate the county to achieve and maintain a percentage of minority employees in particular positions; rather, the county is obligated to follow specified *hiring* practices, with the goal of achieving certain percentages of minority employees in its workforce. The fact that the layoffs in question may have reduced these percentages does not mean that the county has, by instituting the layoffs, violated the terms of the consent decree.

■ The consent decree also prohibits, broadly, any employment practice that has the purpose or effect of unlawfully discriminating against any class member. The petitioners have not suggested or attempted to establish that the layoffs of firefighters had the purpose of discriminating against class members. The layoffs were made pursuant to a seniority system contained in a collective bargaining agreement the county has with the firefighters' union. There is no suggestion that this seniority system is other than neutral in its operation or that it was instituted or maintained with a discriminatory purpose. Given the protection afforded bona fide seniority systems by section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h), therefore, the layoffs cannot be said to constitute *unlawful* discrimination in themselves, even if they have a disparate impact upon minorities. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). I conclude that the consent decree does not, by its terms, proscribe the layoffs instituted by the county.

■ The final ground upon which the petitioners seek relief is the court's inherent equitable power to enforce and modify its decrees. In *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), the United States Supreme Court recognized the power of a court of equity to modify a decree in light of changed circumstances. Later cases have interpreted this power to include the power to modify an injunction so as to provide additional, more drastic relief when changed circumstances make such relief necessary to

achieve the purposes of the litigation. *See, e.g., United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968); *United States v. City of Chicago,* 663 F.2d 1354 (7th Cir.1981).

A number of appellate courts have relied upon the court's inherent equitable power to modify its decrees in affirming a trial court's grant of relief from unforeseen layoffs that threaten to destroy gains in minority hiring. *See, e.g., Boston Chapter, NAACP v. Beecher,* 679 F.2d 965 (1st Cir. 1982), *vacated and remanded for consideration of mootness,* —— U.S. ——, 103 S.Ct. 2076, 76 L.Ed.2d 330 (1983); *Stotts, supra; Brown, supra.* However, the layoff of firefighters by Milwaukee County has not been shown to be an act of discrimination or an act which could justify modification of the consent decree dated March 10, 1980. The movants have presented no proof which would warrant this court in exercising its equitable powers either to enjoin the layoffs or to require new hirings or to purport to modify the consent decree.

Notwithstanding *Hughes v. United States,* 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952), the factual materials now on file do not suggest that a hearing on the matter of modification would be fruitful. I find that the layoffs were not violative of the terms of the consent decree or its spirit. It follows that the present motion for supplemental relief should not be granted.

Therefore, IT IS ORDERED that the petitioners' motion for supplemental relief be and hereby is denied.