SEALY MATTRESS COMPANY OF
MICHIGAN, INCORPORATED,
Plaintiff-Appellee,

v.

SEALY, INCORPORATED,
Defendant-Appellant.

No. 85–1150.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1985.

Decided April 29, 1986.

Phil C. Neal, Friedman & Koven, Chicago, Ill., for defendant-appellant.

James L. Perkins, Winston & Strawn, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge and CAMPBELL, Senior District Judge.*

CUMMINGS, Chief Judge.

In May 1984, the Sealy Mattress Company of Michigan filed this diversity suit against its licensor Sealy, Incorporated, which has its principal place of business in Chicago. Defendant manufactures bedding and related products under various Sealy United States trademarks. Plaintiff is one of its licensees and operates a plant manufacturing Sealy products in Taylor, Michigan. Since 1968 the licensing agreement between plaintiff and defendant does not limit the geographic area in which plaintiff can sell its Sealy products, nor does it contain a clause forbidding competition between the two parties or with other Sealy licensees.

In 1960, the United States filed a civil antitrust action against defendant alleging that its system of exclusive sales territories with its licensees violated Section 1 of the Sherman Act (15 U.S.C. § 1). The district court refused to enjoin the mutually exclusive United States territorial allocations on

the ground that no unreasonable restraint of trade had been shown. However, the Supreme Court reversed in 1967, holding that the territorial allocations were horizontal restraints by the licensees owning defendant's stock. *United States v. Sealy, Inc.,* 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238. The Court stated:

> The territorial arrangements must be regarded as the creature of horizontal action by the licensees. It would violate reality to treat them as equivalent to territorial limitations imposed by a manufacturer upon independent dealers as incident to the sale of a trademarked product. Sealy, Inc., is an instrumentality of the licensees for purposes of the horizontal territorial allocation. It is not the principal.

388 U.S. at 354, 87 S.Ct. at 1851. Because there was also unlawful resale price activity among Sealy and its domestic licensees, the Court rejected Sealy's "claim that the territorial restraints were mere incidents of a lawful program of trademark licensing" (388 U.S. at 356, 87 S.Ct. at 1852), distinguishing *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199.

As a result of the Supreme Court's 1967 decision in *Sealy,* in December of that year a consent decree was entered into by the United States and Sealy that provides in par. IV:

> Defendant and consenting [licensee] manufacturers are each enjoined and restrained from maintaining, adhering to, enforcing or claiming any rights under any combination, contract, agreement, understanding, plan or program between or among themselves or any other manufacturer of Sealy products, to limit or restrict any manufacturer in any substantial way to sales of Sealy products within a prescribed territory.

In the present complaint plaintiff alleged that since March 1984 defendant and Sealy

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

Canada, Ltd. ("Sealy Canada"), which became its wholly-owned Canadian subsidiary in 1980, have prevented plaintiff from selling in Canada the Sealy products that it manufactures in Michigan. This was purportedly accomplished through defendant's and Sealy Canada's use of the latter's Sealy Canadian trademarks that it had purchased from defendant in 1954. The complaint attempted to set out four causes of action against defendant:

1. Breach of licensing agreement with defendant "in that plaintiff's licensing agreement [with defendant] has no sales limitation."

2. Breach of the above-quoted portion of the consent decree in that defendant and its subsidiary there agreed that they "would not attempt to restrict sales outside of the designated manufacturing territory."

3. Tortious interference by defendant with plaintiff's advantageous business relationships.[1]

4. Unlawful conspiracy and attempt to monopolize under Sherman Act by defendant's "excluding all sales of Sealy-marked products to Canada other than those sales made directly by Sealy [there] through its wholly-owned subsidiary."

In June 1984 defendant filed its answer denying that it committed the four violations asserted in the complaint. A fortnight prior thereto, plaintiff had filed a lengthy motion for a preliminary injunction prohibiting defendant directly or through its Canadian subsidiary from engaging in any conduct restraining plaintiff's efforts to export to Canada or sell to Canadian buyers the Sealy products it manufactures in the United States. Judge Hart referred the motion to Magistrate Jurco for report and recommendation.

In her report, the magistrate noted defendant's evidence that it no longer has any licensee stockholders or representatives on its Board and that subsequent to the 1967 consent decree, there was no actual control by the licensees "to create a horizontal agreement between them to allocate markets" as condemned by the Supreme Court in its 1967 opinion. She also found that since 1968 the agreements (amended in 1975) between Sealy and its licensees ceased limiting a licensee's sales of Sealy products to a particular territory in this country. After adverting extensively to the testimony elicited by the parties, the magistrate discussed the various legal arguments advanced before her and concluded that the evidence did not support plaintiff's charge that a horizontal arrangement existed that harmed plaintiff. In recommending the denial of a preliminary injunction, the magistrate stated that she would let the district judge resolve the scope of the 1967 consent judgment rather than attempt to do so herself. (Defendant's App. B.)

Almost five months after the issuance of the magistrate's report, the district court filed its memorandum opinion and order, 599 F.Supp. 1494, granting plaintiff the requested preliminary injunction.[2] Judge Hart found that most of plaintiff's Canadian customers, as a result of Sealy Canada's trademark litigation threats, stopped purchasing Sealy bedding products and that consequently plaintiff now has neither new nor old Canadian customers. He found that this loss of business resulted in irreparable harm to the plaintiff. He concluded that defendant through its wholly-owned Canadian subsidiary was "asserting trademark rights to maintain territorial restrictions" contrary to the above-quoted language in par. IV of the 1967 consent decree. Because the court determined that defendant and Sealy Canada were in violation of the consent decree, it did not pass

---

1. This ground is no longer pressed by the plaintiff on appeal.

2. Ohio-Sealy Mattress Mfg. Co., another licensee of defendant, has filed a brief *amicus curiae* urging affirmance of the preliminary injunction but without any discussion of the use of the Canadian trademarks assailed by plaintiff.

upon the validity of the other three causes of action asserted.[3] (Defendant's App. A.)

Defendant appeals from the grant of the preliminary injunction, arguing that neither the terms of the consent decree nor the licensing agreements have been violated. Defendant does not challenge the district court's finding of irreparable harm (Br. 6, n. 7) but does assert that it erred in determining that the plaintiff had some likelihood of success on the merits (Br. 6). We reverse.

## I

According to the copy of the consent decree contained in defendant's Appendix C, those who originally consented to its entry were defendant and the United States. Defendant's licensees in the United States subsequently became parties to the decree by consenting to its terms under par. III of the decree. Because the district court rested its opinion on its construction of par. IV of the decree, it is requoted here as follows:

> Defendant and consenting [licensee] manufacturers are each enjoined and restrained from maintaining, adhering to, enforcing or claiming any rights under any combination, contract, agreement, understanding, plan or program between or among themselves or any other manufacturer of Sealy products, to limit or restrict any manufacturer in any substantial way to sales of Sealy products within a prescribed territory.

Plaintiff, of course, contends that the language enjoining defendant from maintaining any plan with any other manufacturers of Sealy products to "restrict any manufacturer in any substantial way to sales of Sealy products within a prescribed territory" fits this case like a glove because through attempting to enforce its Canadian trademarks, defendant's wholly-owned Canadian subsidiary is preventing plaintiff from selling Sealy products within Canada. Because of the "combination * * * between or among themselves" clause in par. IV, the decree was referring to a concert of

action by Sealy and its licensees (which was the evil that existed prior to the consent decree) on the one hand and another Sealy product manufacturer on the other. No such concert of action was present or even alleged here between defendant or its Canadian subsidiary and Sealy licensees, so that there is no fit in par. IV. Likewise the phrase "prescribed territory" prohibits defendant from keeping others out of the geographic area in its licensees' contracts and therefore has no reference to Canada. To have the effect desired by plaintiff would require the addition of the phrase "and any territory outside the United States," each "prescribed territory" being a United States area.

■ As defendant properly observes, a consent decree is not to be liberally construed, as the district judge thought (Defendant's App. A, p. 17) and as plaintiff urges. It is to be interpreted strictly in accordance with its own language and not in accordance with its purposes. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483; *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235–36, 95 S.Ct. 926, 933–34, 43 L.Ed.2d 148; *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256; *Hughes v. United States*, 342 U.S. 353, 356–357, 72 S.Ct. 306, 307–08, 96 L.Ed. 394; *Freedman v. Air Line Stewards & Stewardesses Assoc.*, 730 F.2d 509, 515 (7th Cir.1984), certiorari denied *sub nom. Freedman v. Trans World Airlines*, —— U.S. ——, 105 S.Ct. 275, 83 L.Ed.2d 211. A recent case relied upon by plaintiff, *United States v. American Cyanamid Co.*, 719 F.2d 558, 563 (2d Cir.1983), certiorari denied *sub nom. American Cyanimid Co. v. Melamine Chemicals Inc.*, 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127, is not to the contrary but rather quotes a Supreme Court case recognizing that a consent decree is to be construed strictly and "within its four corners." The district court accepted plaintiff's argument and interpreted the terms

---

**3.** See text and note 1 *supra*.

of the consent decree in accord with its purpose (Plaintiff's App., p. 17) and thus erred in holding that the plaintiff had demonstrated sufficient likelihood of success on the merits. See *Roland Machinery Co. v. Dresser Indus.*, 749 F.2d 380, 387 (7th Cir. 1984).

▮ As mandated by the Supreme Court, this decree was written to prohibit horizontal agreements between defendant and its United States licensees confining the licensees to their respective present or future *domestic* geographic areas. *United States v. Sealy, Inc.*, 388 U.S. 350, 352, 354, 356, 87 S.Ct. 1847, 1849, 1851, 1852, 18 L.Ed.2d 1238. Thus par. IV of the consent decree forbids limiting sales within "prescribed territories." Indeed the language of both the Government's Sherman Act complaint and the consent decree, as revealed in its pars. II(B) and III,[4] were limited to interstate commerce (Defendant's Ex. 2 and its App. C, p. 2) and have nothing to do with Canada. Therefore, it is unreasonable to apply par. IV, the injunctive clause of the decree, to a Canadian manufacturer of Sealy products such as Sealy Canada or to construe "a prescribed territory" as including Canada. Moreover, the arrangement between Sealy and its wholly-owned Canadian subsidiary must be viewed as vertical or unilateral (*Copperweld Corporation v. Independence Tube Corporation*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628) and therefore outside the scope of the consent decree. *United States v. Sealy, Inc.*, 388 U.S. at 354, 358–59, 87 S.Ct. at 1851, 1853. Not only was there no horizontal agreement here within the ambit of the Supreme Court's *Sealy* opinion (388 U.S. at 354, 356, 87 S.Ct. at 1851, 1852), but the district court could not persuasively construe this decree, which was explicitly based on defendant's and its domestic licensees' violation of the Sherman Act (Defendant's App.

C, par. II(B)), as applicable here where the court expressly refused to find any Sherman Act violation (Defendant's App. A, p. 17)! Finally, the restraints alleged here ostensibly included only Canadian trademarked articles and involved no price-fixing so that they appear to be perfectly valid as ancillary to a trademark licensing scheme. *United States v. Sealy, Inc.*, 388 U.S. at 356 n. 3, 87 S.Ct. at 1852 n. 3; *Alberto-Culver Company v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir.1972). Of course, at trial plaintiff may be able to demonstrate that the alleged restraints were unreasonable and violative of Section 1 of the Sherman Act or otherwise illegal, but the present record does not reveal any antitrust offense, and indeed Judge Hart carefully refrained from concluding that defendant's conduct contravened the Sherman Act or that the Canadian trademarks were invalid (Defendant's App. A, pp. 17, 20). Moreover, a Canadian court already has before it the question whether plaintiff's right to manufacture under defendant's United States trademarks gives it the right to sell Sealy products in Canada. *Sealy Canada Ltd. v. N. Tupperman Limited*, No. 15344 Supreme Court of Ontario, filed February 27, 1984 (Plaintiff's Ex. 1).[5]

Nothing in the consent decree required defendant to license any of its Canadian trademarks to plaintiff or defendant's other licensees. Since the consent decree does not bar the conduct in question, it was improper to grant the preliminary injunction on that single ground, the only one used by the district court. The construction of the decree sought by plaintiff would require a party to the decree to obtain its modification under par. VI, and no such action is pending. The decree in its present form cannot be stretched to satisfy plaintiff's complaint.

---

4. Paragraph II(B) of the consent decree, describing the offense committed by Sealy and its shareholder licensees, terms it an "unreasonable restraint of *interstate trade and commerce*" (emphasis supplied). Paragraph III of the decree, requiring Sealy licensees to file consents to be bound by the decree, refers to any Sealy "franchise or license to manufacture or sell products

in *the United States* under any Sealy, Inc. trade name or trademark * * *" (emphasis supplied).

5. At the oral argument, we were advised by defense counsel that the Canadian litigation has been halted by the preliminary injunction. Presumably it will now go forward.

## II

■ As seen, the sole ground used by the district court in granting the preliminary injunction was its erroneous interpretation of the consent decree. Possibly for that reason plaintiff renews an alternative argument below that defendant has violated its license agreement with plaintiff. In considering that argument it should be noted that defendant had sold its Canadian trademarks to its wholly-owned Canadian subsidiary in 1954, fourteen years before the 1968 license agreement (as amended in 1975). The license agreement which granted plaintiff the right to manufacture Sealy products at its plant and "to sell Sealy products and to use Sealy marks in connection therewith" certainly excluded the Canadian trademarks because they had been transferred to the defendant's Canadian subsidiary many years ago. Defendant granted no rights in the Canadian trademarks to plaintiff or defendant's other licensees. None of the decisions involving the validity of the 1968 license agreement condemned defendant's sale of its Canadian trademarks to its wholly-owned subsidiary in that country. See 585 F.2d 821 (1978); 669 F.2d 490 (1982); 745 F.2d 441 (1984), all decisions of this Court. Therefore, it cannot be concluded that the 1968 license agreement as amended permitted plaintiff to sell in Canada. It simply cannot be prophesied at this juncture that plaintiff's chance of prevailing on its breach of license theory is "better than negligible" (*Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir.1984)), or that it has shown a "likelihood of prevailing at trial" (*Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986)), the pertinent standard for testing the right to a preliminary injunction.

## III

■ Plaintiff contends that the preliminary injunction was proper on still another ground not reached by the district court, namely, that defendant's actions "constitute a horizontal combination to allocate exclusive sales territories in violation of Section 1 of the Sherman Act" and *per se* illegal (Br. 30; see also Br. 15, 21).[6] This argument seems to have no substance since, as already seen, the combination between defendant and its wholly-owned Canadian subsidiary was clearly vertical or unilateral and therefore not *per se* or otherwise illegal. *Copperweld Corporation v. Independence Tube Corporation,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628. The district judge himself recognized that the arrangements between defendant and its Canadian subsidiary amounted to a "program of vertical integration" (Plaintiff's App. A, p. 17). Therefore, we cannot agree with plaintiff that it has a "better than negligible chance" on its Sherman Act claim as required by *Roland Machinery Co.,* 749 F.2d at 387, to support the issuance of a preliminary injunction.

---

In conclusion, on the record before us, it does not appear that defendant or Sealy Canada has violated the 1967 consent decree, the license agreement with plaintiff, or Section 1 of the Sherman Act. Although its chances of success on any of those three grounds have not yet been shown to be "better than negligible" or as having "a likelihood of prevailing at trial" as required by the *Roland Machinery Co.* and *Lawson Products* cases, perhaps plaintiff can ultimately prevail in the district court. Our decision today is not meant to bar it from proceeding with its complaint on remand. Nevertheless, the judgment of the district court granting plaintiff a preliminary injunction must be reversed as unwarranted. On remand Circuit Rule 18 shall apply.

CUDAHY, Circuit Judge, dissenting:

As the majority notes, in order to sustain the preliminary injunction, we need only determine that the plaintiff's chance of prevailing on the merits is "better than negligible." And I certainly agree with the majority that a consent decree is to be interpreted strictly in accordance with its own terms. *See, e.g., United States v. Huebner,* 752 F.2d 1235, 1244 (7th Cir.),

---

6. The dissenting opinion apparently disagrees with plaintiff because it asserts that the consent decree is not limited to horizontal arrangements.

cert. denied, —— U.S. ——, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985). I am compelled to dissent because I believe that the majority has misinterpreted the language of the decree and considered the purposes of the decree in a way which defeats its plain terms.

The majority reads the language of the decree to require concert of action "between defendant or its Canadian subsidiary *and* Sealy licensees." (Emphasis supplied.) Apparently the majority believes that an agreement between Sealy and "any other manufacturer of Sealy products" does not fall within the terms of the consent decree unless there is also agreement between Sealy and its licensees. Perhaps the language of the decree is not crystal clear; but it does purport to prohibit Sealy from enforcing certain agreements between itself and any other manufacturer of Sealy products. Thus in the language of the decree, "Defendant ... [is] enjoined ... from ... claiming any rights under any ... contract ... between [itself and] any other manufacturer of Sealy products, to limit or restrict any manufacturer in any substantial way to sales of Sealy products within [the territory outside Canada]."

The essential error of the majority is to inappropriately consider the "purposes" of the decree in an effort to buttress its very questionable contention that only horizontal agreements can violate the decree.[1] Of course, the majority characterizes the agreement at issue here as something other than horizontal. Because the focus of the law underlying the decree is on horizontal restraints and because the Supreme Court found the agreements of Sealy with its licensees to be horizontal, the majority argues that the consent decree prohibits only horizontal arrangements. But there is no such limitation in the language of the consent decree or reasonably inferable from its terms. Whatever purposes may be discerned somewhere in the evolution of the decree, there is certainly no present reason to restrict it only to arrangements that may easily be characterized as horizontal.

The majority also argues that the consent decree, under the terms of its paragraphs II(B) and III, is limited to interstate commerce (apparently as contrasted with foreign commerce). But paragraph II(B) imposes no limitation on the consent decree; this provision merely states that the defendant had engaged in a combination or conspiracy in "unreasonable restraint of interstate trade and commerce." Paragraph III (the other provision on which the majority relies) merely defines the conditions under which Sealy must require a licensee to file a consent to be bound by the consent decree. It is paragraph IV that defines the prohibited acts and paragraph IV makes no references to interstate commerce nor does it contain *any* language that could be construed as a geographical limitation. Here again the majority inappropriately relies upon what it discerns as the purposes of the decree. Thus the majority argues that the decree was designed to limit licensees to their respective present or future *domestic* geographic areas. There is simply no textual basis for such a narrowly domestic focus.

In addition, the majority believes it relevant that the district court did not find the arrangement at issue here to be a violation of the Sherman Act. All that need be said about that argument is that, if the parties were concerned only about actual violations of the antitrust laws, there would be no need for the consent decree. It is not necessary to forbid what is already illegal.

Further, the majority observes that "the restraints alleged here ostensibly included only Canadian trademarked articles and involved no price-fixing so that they appear to be perfectly valid as ancillary to a trademark licensing scheme." But the district court in effect found as a fact that "Sealy Canada attempted to stop Michigan from selling in Canada for the sole purpose of eliminating intrabrand competition and sta-

---

1. For example, on page six of the opinion, the majority concludes that "the decree was referring to a concert of action by Sealy and its licensees *(which was the evil that existed prior to the consent decree)."* (Emphasis supplied.)

Two pages later the majority emphasizes that the "decree was written to prohibit horizontal agreements between defendant and its United States licensees."

bilizing or maintaining higher prices." Although this statement was listed by the district court as a "Conclusion of Law," it should be treated as a factual finding. The statement is not, nor does the majority assert that it is, clearly erroneous.

Most importantly, the majority does not explain why the plain language of the decree does not prohibit the activities at issue here. If Sealy wishes to limit the consent decree to horizontal arrangements, it should seek a modification under paragraph IV. We should not, however, grant a modification of the consent decree under the guise of construing it. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 n. 9, 95 S.Ct. 926, 934 n. 9, 43 L.Ed.2d 148 (1975); *United States v. Armour*, 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Surely the district court did not abuse its discretion in entering a preliminary injunction in these circumstances.

I therefore respectfully dissent.