

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-1998

# Harris v. City of Philadelphia

Precedential or Non-Precedential:

Docket 97-1144

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Harris v. City of Philadelphia" (1998). *1998 Decisions.* Paper 35.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/35

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 27, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1144

MARTIN HARRIS; JESSE KITHCART; DENNIS CARTER;
MORRIS DAYS; EVELYN LINGHAM; ESDRAS FOWLER;
MICHAEL GRAVES

v.

THE CITY OF PHILADELPHIA; REV. ALBERT F.
CAMPBELL; ROSITA SAEZ-ACHILLA; M. MARK MENDEL;
HON. PAUL M. CHALFIN; and MAMIE FAINES, each in
his or her official capacity as a member of the Board of
Trustees of the Philadelphia Prison System; FRANK HALL,
in his official capacity as Commissioner of the
Philadelphia Prison; EARL HATCHER, in his official
capacity as Warden of Holmesburg Prison; WILHELMINA
SPEACH, in her official capacity as Warden of the
Detention Center; THOMAS A. SHIELDS, in his official
capacity as Warden of the House of Corrections; JOSEPH
CERTAINE, in his official capacity as Managing Director of
the City of Philadelphia; and HON. EDWARD G.
RENDELL, in his official capacity as Mayor of the
City of Philadelphia

> The City of Philadelphia, Rev. Albert P. Campbell,
> Rosita Saez-Achilla, M. Mark Mendel, Hon. Paul M.
> Chalfin, Mamie Faines, each in his or her official
> capacity as a member of the Board of Trustees of
> the Philadelphia Prison System, Frank Hall, in his
> official capacity as Commissioner of the
> Philadelphia Prisons, Earl Hatcher, in his official
> capacity as Warden of Holmesburg Prison,
> Wilhelminia Speach, in her official capacity as
> Warden of the Detention Center, Thomas A.

Shields, in his official capacity as Warden of the
House of Corrections, Joseph Certaine, in his
official capacity as Managing Director of the City
of Philadelphia, and Hon. Edward G. Rendell,
in his official capacity as Mayor of the City
of Philadelphia,

        Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 82–cv–01847)

Argued January 30, 1998

BEFORE: MANSMANN, COWEN and ALITO, Circuit Judges

(Filed February 27, 1998)

David J. Wolfsohn, Esq. (Argued)
Hangley, Aronchick, Segal & Pudlin
One Logan Square
12th Floor
Philadelphia, PA 19103

  Counsel for Appellants

David Richman, Esq. (Argued)
Pepper, Hamilton & Scheetz
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103–2799

  Counsel for Appellees

OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal concerns whether the district court
appropriately construed the terms of a consent decree
entered into by the City of Philadelphia and various related

2

officials (collectively, the "City") and the plaintiff-appellee class (the "Plaintiffs") consisting of all present and future inmates in the Philadelphia Prison System. The decree resolved the Plaintiffs' civil rights action alleging unconstitutional overcrowding in the prison system. The City agreed, inter alia, to develop a management information services (MIS) plan for tracking the inmate population and to fulfill specified aspects of the plan by certain deadlines. Subsequently, on January 6, 1997, the district court issued an amended order (the "Amended Order") requiring the City to undertake and achieve certain performance goals relating to the MIS plan by various deadlines or face the imposition of fines. The City contends that the parties never agreed to these additional terms and that the Amended Order modifies and expands the decree beyond what the parties agreed to in the consent decree. We agree with the City and will vacate the Amended Order.

I.

A group of inmates filed a class action suit in 1982 pursuant to 42 U.S.C. SS 1983 and 1988 claiming violations of the First, Eighth, Ninth, and Fourteenth Amendments because of alleged overcrowding at Holmesburg Prison. An amended complaint filed in 1983 asserted claims pursuant to 42 U.S.C. S 1983 for alleged constitutional deprivation under the Eighth and Fourteenth Amendments. The plaintiff class later grew to include all present and future inmates in the Philadelphia Prison System, and the suit expanded to encompass the entire prison system. In 1986, after extensive negotiation, the City and the Plaintiffs entered into a settlement in which the Plaintiffs relinquished their claims for damages in return for various undertakings by the City. For example, the agreement required the City to construct a 440-bed detention facility in downtown Philadelphia by December 31, 1990, and to release inmates according to certain procedures if the inmate population exceeded a maximum allowable figure. The district court approved the settlement and entered a consent order on December 30, 1986 (the "1986 Consent Decree").

By 1989, it became evident that the 440-bed facility would not be available by the agreed upon date. In response, the City and the Plaintiffs negotiated an agreement designed to alleviate overcrowding in the interim but did not secure the district court's approval of this agreement. Consequently, the Plaintiffs filed a motion in February of 1990 to vacate the 1986 Consent Decree and reinstate their amended complaint. The City opposed the motion. In August of 1990, the Plaintiffs moved for emergency relief from the continued overcrowding, and, in its response, the City expressed approval of the relief requested. Further negotiation led the parties to enter into a new and more detailed agreement in 1991 culminating in another consent order (the "1991 Consent Decree"). Among other items, the 1991 Consent Decree requires the City to engage in a Prison Planning Process addressing the physical plant of the prison system as well as its operation. This process entails development of population projections, a population management plan, physical and operational standards, a capital projects management plan, an operational management plan, and a management information services plan.

This appeal chiefly concerns the MIS plan. The relevant section of the 1991 Consent Decree provides:

> F. Management Information Services Plan. The defendants shall develop a plan to provide management information systems (both manual and electronic as necessary) to support and perform all actions called for in paragraphs "A" through "E," above. To this end, the defendants shall develop a strategic systems plan that identifies what information is needed and how it will be managed to support and perform the requirements of this Agreement.
>
> The defendants shall achieve compliance with paragraphs "A" through "F " by performing the activities set forth on the attached Exhibit "A", consisting of three (3) numbered pages and seven (7) unnumbered pages, by each of the dates specified therein. Exhibit "A" is incorporated herein by reference as part of this Appendix and also as a part of the agreement of the parties.

4

App. at 262. Exhibit "A" lists the following activities pertinent to the MIS plan and their corresponding deadlines:

F   Management Information Services Plan

F1 Develop a MIS to support all activities

Write scope of services for MIS development contract
Establish Criminal Justice Management Information System Manager
Establish Criminal Justice System Information Board
Hire MIS Consultant
Develop Board Policies
Develop Data System Definitions
Identify Application and Equipment Needs
Identify and Implement Short-term Needs
Draft Criminal Justice MIS Plan
Develop Implementation Schedule

App. at 272.

During a status conference concerning the MIS plan on November 6, 1996, the district court proposed entry of an order imposing deadlines for the implementation of the MIS plan and requiring various other performances by the City under penalty of fines. The City objected to such an order. At another conference on November 20, 1996, the district court again suggested the appropriateness of such an order, and the City again objected. Despite the objection, the district court sua sponte entered the Amended Order on January 6, 1997.[1] It requires the City to (i) meet deadlines for implementation of the MIS plan under penalty offines, (ii) complete a "clean-up" of the computer database used to track inmates by a certain date, (iii) conduct monthly audits of the database, and (iv) pay fines for errors in the database that exceed an error rate of five percent. This appeal followed.

---

1. The Amended Order superseded the district court's order of December 6, 1996, but contained substantially the same terms.

5

II.

The district court exercised jurisdiction pursuant to 28 U.S.C. S 1331. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291. The Amended Order is final and immediately appealable because, as discussed herein, it modified the 1991 Consent Decree thereby establishing the parties' rights and obligations. See United States v. Wheeling-Pittsburgh Steel Corp., 818 F.2d 1077, 1082 (3d Cir. 1987). Since consent decrees have the attributes of contracts voluntarily undertaken, we exercise plenary review over a district court's construction of a consent decree. See Fox v. United States Dep't of Hous. & Urban Dev., 680 F.2d 315, 319 (3d Cir. 1982).

III.

We discern the scope of a consent decree by examining the language within its four corners. See United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S. Ct. 1752, 1757 (1971). In so doing, we must not strain the decree's precise terms or impose other terms in an attempt to reconcile the decree with our own conception of its purpose. See id. A consent decree is the product of negotiation between the parties and embodies a compromise struck among various factors, including the parties' competing goals and the time, expense, and risk of litigation. See id. "[T]he decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve." Id. (footnote omitted). By consenting to a decree, a defendant waives the right under the Due Process Clause to litigate the issues raised by the plaintiff 's complaint. See id. at 682, 91 S. Ct. at 1757. A court should not later modify the decree by interposing terms not agreed to by the parties or not included in the language of the decree. See United States v. Atlantic Ref. Co., 360 U.S. 19, 23, 79 S. Ct. 944, 946 (1959); Hughes v. United States, 342 U.S. 353, 357, 72 S. Ct. 306, 308 (1952).

6

A.

The district court's Amended Order is an attempt to effectuate its conception of the purpose of the 1991 Consent Decree. The district court did not fully articulate its conception of that purpose. Nevertheless, it is manifest from the Amended Order that the district court concluded that the City should not only develop the MIS plan and certain components thereof but also implement the MIS plan to a satisfactory degree of operation by a certain date subject to fines. While laudable from an efficiency or social policy perspective, the Amended Order runs afoul of the well-settled law on construing consent decrees.

As the language of the decree reveals, the additional requirements imposed in the Amended Order cannot be found anywhere within the four corners of the 1991 Consent Decree. In that consent decree, the City agreed to "develop a plan to provide management information systems (both manual and electronic as necessary) to support and perform all actions called for" in other plans in the Prison Planning Process. App. at 262. Moreover, the City agreed to "develop a strategic systems plan that identifies what information is needed and how it will be managed to support and perform the requirements of this Agreement." Id. It also agreed to perform "the activities set forth on the attached Exhibit `A'[.]" Id.

Nothing in this language or the activities listed in Exhibit "A" indicates an agreement by the parties that the City will comply with the requirements eventually imposed in the Amended Order. For example, one of the activities listed in Exhibit "A" is to "Develop [an] Implementation Schedule" for the MIS plan. App. at 272. However unfortunate an outcome, agreeing to develop an implementation schedule for the MIS plan or a "strategic systems plan" is not the same as agreeing to implement the schedule or the plan. The City never agreed to implement the MIS plan by a certain date under penalty of fines. Nor did the City agree to submit to monthly audits, to "clean-up" its database once developed, or to achieve a certain level of accuracy in its database on an ongoing basis. Indeed, the Amended Order appears to subject the City's data entry employees to perpetual oversight by the district court -- a situation not

7

contemplated by the parties in the agreement. We can appreciate the district court's frustration with the delays in implementing the MIS plan and in bringing these matters to a close, but we must conclude that the 1991 Consent Decree does not provide the authority for the district court to proceed in this manner.

B.

In support of the Amended Order, the Plaintiffs emphasize that the 1991 Consent Decree "provides for sanctions should the City fail to implement the mandated plans." Appellee's Br. at 6. However, it is more accurate to state that the decree allows for fines should the City fail to comply with certain plan milestones. Paragraph 27 of the decree states, "Defendants shall be subject to a penalty of $500.00 per day for each day of delay in complying with or fulfilling a plan milestone . . . ." App. at 250. The City only agreed to pay fines for its failure to submit certain aspects of the MIS plan, and the milestones referenced in Paragraph 27 do not include the requirements imposed in the Amended Order. The Plaintiffs also argue that Paragraph 23 of the decree authorizes the district court to impose deadlines, backed by fines, for implementation of the MIS plan. Paragraph 23 states, "Once a plan is approved by the Court, defendants shall carry it out, subject to the penalties set forth in Paragraph 27." App. at 248. Nothing in this language, however, evidences an agreement by the City to implement the MIS plan, as opposed to complying with specified plan milestones, by a certain date subject to fines. In sum, paragraphs 27 and 23 do not demonstrate any agreement by the City to implement the MIS plan by a certain deadline under penalty of fines.

Plaintiffs also argue that the district court's Trust Indenture powers provide the requisite authority to issue the Amended Order. The Trust Indenture empowers the district court to approve contracts funded by certain bond money. The relevant language provides that "all contracts for the construction of the Detention Facility and the Criminal Justice Center . . . must be approved by the U.S. District Court for the Eastern District of Pennsylvania prior

8

to their award." App. at 309-10. To be sure, the City contracted with a third party to create the database and supply the necessary hardware to effectuate the MIS plan. Nevertheless, the power to approve this and other contracts does not include the power to impose certain deadlines, require audits, set error rate requirements, or impose fines related to the MIS plan. We conclude that the Trust Indenture does not authorize the district court to impose the requirements and fines set forth in the Amended Order.

Finally, the Plaintiffs attempt to construe the Amended Order as an exercise of the district court's power to fashion sanctions pursuant to Paragraph 30 of the decree. That provision states, "Nothing herein is intended to restrict the Court's authority to issue contempt citations or its power under the All Writs Act." App. at 251. Paragraphs 24 through 26 provide for a procedure whereby a Special Master will monitor and report on the City's compliance with the consent decree. The parties may request a hearing before the Special Master and subsequently the district court to resolve issues that remain in dispute. There is nothing in the record to indicate that this procedure was followed in this case. There has been no finding by anyone of a lack of substantial compliance by the City, and the district court has not conducted any contempt hearing. To the extent that the Amended Order foreshadowed or signaled the sanctions that the district court would impose if the City was found not to be in substantial compliance, it placed the cart before the horse. We conclude that the Amended Order cannot be justified as remedying a lack of compliance or as an exercise of the district court's contempt powers.

IV.

The district court's Amended Order of January 6, 1997, modified the parties' agreement as embodied in the 1991 Consent Decree and imposed terms not agreed to by the parties. We will vacate the Amended Order and remand for further administration of the consent decree consistent with this opinion.

Each party to bear its own costs.

9

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

10